# SECOND DISTRICT, NOVEMBER, 1892.

---

THE J. B. WATKINS LAND AND MORTGAGE COMPANY v.
W. W. HOWETH ET AL.

### No. 12.

**Estoppel — Forged Note.** — H. executed a vendor's lien note to B., who afterward, desiring to negotiate it to a loan company, had H. to join with him in making a lengthy affidavit, in printed form, stating that B. was the owner and holder of the note, describing it; that the title of the land which secured it was good; that it constituted a prior lien on the land; that H., the maker, was solvent, etc. The note was not produced at the time the affidavit was made, and in truth B. had then already sold it, which fact H. did not know. B. took the affidavit, together with a forged note which was a literal copy of the genuine one described therein, to the loan company, and sold it such forged note. H. afterward paid the genuine note, and when sued on the forged note pleaded non est factum. *Held*, that the affidavit aforesaid did not estop him to make such plea.

APPEAL from Cooke. Tried below before Hon. D. E. BARRETT.

*Stuart, Bailey & McCans,* for appellant.—The court erred in not holding as a matter of law that the written statement made by Howeth and Bunch to plaintiff was such a representation as to the note in controversy

as to preclude Howeth from afterward denying that he executed the same. He who makes representation to another that certain material facts are true, knowing that the person to whom he makes such representations relies upon the same and believes them to be true, and intends to act upon them, and has acted to his prejudice, can not be heard afterward to deny the truth of such representations, although the person making them honestly believed them to be true at the time they were made. Loper v. Robinson, 54 Texas, 510; Dan. Neg. Inst., sec. 1351; 2 Pome. Eq. Jur., sec. 885; Kerr on Fraud and Mistake, 68, 69.

*Davis & Harris*, for appellees.—All of the material matter set forth in the written statement made by appellee Howeth was substantially true; and if appellant, through carelessness and negligence, bought a forged note corresponding with the genuine note described in the statement, the appellee is not responsible for the consequences. Blum v. Merchant, 58 Texas, 400; Echols v. McKie, 60 Texas, 41; Steed v. Petty, 65 Texas, 490; Bige. on Estop., 437, 442, 467; 1 Dan. on Neg. Inst., sec. 802; Pome. Eq., secs. 810, 812, 813.

STEPHENS, Associate Justice.—This appeal is from a judgment rendered in the District Court of Cooke County on the 17th day of May, 1889, against appellant, in a suit upon a promissory note. The record presents for determination a single, though somewhat novel, question.

On the 26th day of August, 1887, E. F. Bunch and wife conveyed to appellee W. W. Howeth a certain lot of land situated in the town of Gainesville, Cooke County, for which Howeth executed his negotiable promissory note, to the order of E. F. Bunch, in the sum of $400, payable on or before September 1, 1888; and to secure its payment a vendor's lien was retained on the land conveyed. Sometime prior to the 7th day of October, 1887, said Bunch proposed to appellant to sell it the note, to which proposition appellant replied that he and the maker of the note must make an affidavit in respect thereto, as required by said company in the purchase of such notes, and furnished Bunch a blank form for that purpose. At the request of Bunch appellant Howeth joined him in making said affidavit, upon being informed by Bunch that he desired to negotiate the note, and that the affidavit was required for that purpose. The affidavit was made, bearing date the 7th day of October, 1887, and began as follows:

" *State of Texas, County of Cooke.*—I, W. W. Howeth, maker, and E. F. Bunch, payee, do solemnly swear, each for himself, that said payee is the legal owner and holder of a certain vendor's lien note, dated August 26, 1887, bearing interest at the rate of 10 per cent per annum, and signed by said maker."

Then follow a great many minute statements with reference to the note

and the land which secured its payment, referring to the book and page where the deed was recorded, setting forth the absence of all other liens and the priority of the lien in question, the solvency of the maker, giving a detailed statement of the property owned by him subject to execution, the facts about his homestead, and such like statements bearing upon the validity of the lien as security and upon the solvency of the maker of the note; which statements constituted the bulk of said affidavit.

Prior to the making of this affidavit Bunch had sold and did not then own the note which had been executed by Howeth, which facts were concealed by Bunch from both appellant and appellee (the note not being produced at the time of the making of said affidavit). Howeth testified, that he believed at the time that Bunch owned the note executed by him, and had no reason to doubt or suspect that he had already negotiated it; and that he signed the same without hesitation, there being no note exhibited to him, and that the note which he had in his mind and referred to in the statement was the genuine note which he had executed; and that at the maturity of that note, it and the note sued on were presented to him for payment, the one sued on being a forgery and literal copy of the genuine note. He consequently pleaded non est factum to the note sued upon, but paid the genuine note.

M. J. Dart, the manager of appellant company in Texas, testified, that on the 8th of October, 1887, Bunch called a second time at the office of said company in Dallas and offered the note sued on for sale, accompanied by the affidavit above mentioned, and thereupon he bought the note for said company and paid him therefor its face value, and that he was induced to make such purchase on the statements and representations made therein by Howeth, and that he would not have bought the note and parted with the money paid therefor if Howeth had not made said statements; that he relied on the affidavit implicitly and was deceived thereby, and that he knew Howeth to be a truthful and solvent man. He also testified that it was the universal custom of his company to require statements similar to the one given by Bunch from every person offering to sell it vendors' lien notes. Appellant therefore pleaded an estoppel against Howeth, which was adjudged insufficient by the trial court. It was shown on the trial that Bunch was insolvent and had fled the country, the note being indorsed in blank by him. It also appeared that the statements in the affidavit were all true except the introductory statement quoted above.

Among other requisites of an estoppel, it is laid down by Mr. Pomeroy (2 Pomeroy's Equity, section 805): " (1) There must be conduct—acts, language, or silence—amounting to a representation or a concealment of material facts. (2) These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. * * * (4) The conduct must be done with the intention, or at least with the expectation, that

it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon."

The fraud perpetrated on appellant was accomplished by means of a forged note.

It is true the agent of appellant testified that he was deceived by the affidavit, but in the absence of the forged note there could have been no deception. It was wholly immaterial whether Bunch owned the genuine note at the time or not, as that note was not the one assigned to appellant. He could just as easily have perpetrated the fraud while still owning the genuine note, and negotiated it afterwards. The form of the affidavit furnished by appellant did not direct attention to the question of the genuineness of the note; but the purport of its contents naturally led the mind of the maker of the note to other matters of inquiry. The statement as to the ownership of a certain note described in a certain deed on record was merely an introductory matter to the more important inquiries as to the condition of the title to the property which secured the note, and as to the solvency of the maker of the note. It is clear that the maker of the note was innocent of any intentional wrong, and that his statement in respect to the ownership of the genuine note was not made under circumstances which required him to know that a forged note was the subject of his affidavit. The note mentioned in the affidavit was not identified in any way except by description of the genuine note. If appellant desired to guard against forgery, it should have required an affidavit from the maker as to the genuineness of the particular note offered for sale, by having it submitted to the maker and identified by mark or otherwise as the note in reference to which the statements in the affidavit were made.

Our conclusion is, that the representation in the affidavit as to the ownership of the genuine note, which was the only false statement therein, was not material under the facts of this case; and that if said representation be deemed an assertion, not only of title to the genuine note, but of its identity with the forged note, which would be material, this fact was unknown to Howeth, and the circumstances were not such as to impute knowledge to him; and that it was not made with the intention or expectation that it would be acted upon in so far as this identity between the genuine and spurious note was asserted, and that under the circumstances it was neither natural nor probable that it would be so acted upon; in other words, that the fraud of Bunch in substituting a forged note, and in using the affidavit as a means of negotiating the forged note, was unforeseen and unexpected, and both unnatural and improbable.

We therefore hold that the judgment of the lower court should be affirmed, and it is accordingly so ordered.

*Affirmed.*

Delivered November 1, 1892.